FILED
99 MAY 14 AM 9:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JAMES CAIN, | ) | |
| Plaintiff, | ) | |
| vs. | ) | CV 98-BU-1615-S |
| JIM WALTER RESOURCES, INC. | ) | |
| Defendant. | ) | |

ENTERED
MAY 14 1999

MEMORANDUM OPINION

This case is presently pending before this Court on Motion for Summary Judgment (Doc. 12) filed by the Defendant Jim Walter Resources, Inc. (hereinafter "JRW"). Plaintiff James Cain sued his former employer, JRW, alleging that he was terminated in violation of Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq., and the Alabama Age Discrimination by Employers Act, Ala. Code § 25-1-20, et. seq. By statute, the Alabama act is equivalent to the ADEA, except that a plaintiff pursuing a remedy under the Alabama act is not required "to pursue any administrative action or remedy prior to filing suit." Ala. Code § 25-1-29. Furthermore, a plaintiff alleging a claim under both the ADEA and the Alabama act is entitled to only one recovery. Id. Therefore, the two causes of action will be considered together.

SUMMARY JUDGMENT STANDARDS

Summary judgment provides the parties an opportunity to test the mettle of a case

before it ever reaches trial. On a motion for summary judgment, the court assesses all of the proof the parties bring to bear in order to ascertain whether there is a genuine need for a trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986)(quoting Advisory Committee Note to 1963 Amendment to Fed. R. Civ. P. 56(e)). Summary judgment is appropriate only if the court concludes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).

A party seeking summary judgment has the initial responsibility of informing the court of the grounds for its motion and specifically identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553; *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The moving party's burden is not meager; it must illuminate for the court the reasons why the non-moving party cannot or does not raise a genuine issue of material fact sufficient to support a trial. *Clark*, 929 F.2d at 608. The moving party's burden was set forth in *Clark* as follows:

> The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment. *Celotex* did not change the general rule. *Celotex* simply holds that under certain circumstances the movant may meet its Rule 56 burden without negating an

Page 2 of 10

> element of the non-moving party's claim and that under such circumstances it is sufficient to point to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden. Even after *Celotex* it is never enough to simply state that the non-moving party cannot meet its burden at trial.

*Id.* (citing *Celotex*, 477 U.S. at 323-25, 106 S. Ct. 2553-54).[1]

Once the moving party has satisfied this initial burden, however, the nonmoving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Company*, 32 F.3d 520, 523 (11th Cir. 1994). "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(e)); *see Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). However, "Rule 56 . . . does not impose upon the district court a duty to survey the entire record in search of evidence to support a non-movant's opposition." *Id.*; *see also Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment."), *cert. denied*

---

[1] The Eleventh Circuit recognized that *Celotex* created "an exception to the *Adickes* [*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970)] rule for [an] uncommon situation," i.e., "when neither party could prove either the affirmative or the negative of an essential element of the claim." *Clark*, 929 F.2d at 607, 608. In this "uncommon situation," the *Celotex* exception allows a moving party to carry its burden by showing or "pointing out," by reference to record, that the non-moving party cannot prove its claim. *Id.* at 607.

element of the non-moving party's claim and that under such circumstances it is sufficient to point to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden. Even after *Celotex* it is never enough to simply state that the non-moving party cannot meet its burden at trial.

*Id.* (citing *Celotex*, 477 U.S. at 323-25, 106 S. Ct. 2553-54).[1]

Once the moving party has satisfied this initial burden, however, the nonmoving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Company*, 32 F.3d 520, 523 (11th Cir. 1994). "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(e)); *see Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). However, "Rule 56 . . . does not impose upon the district court a duty to survey the entire record in search of evidence to support a non-movant's opposition." *Id.*; *see also Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment."), *cert. denied*

---

[1] The Eleventh Circuit recognized that *Celotex* created "an exception to the *Adickes* [*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970)] rule for [an] uncommon situation," i.e., "when neither party could prove either the affirmative or the negative of an essential element of the claim." *Clark*, 929 F.2d at 607, 608. In this "uncommon situation," the *Celotex* exception allows a moving party to carry its burden by showing or "pointing out," by reference to record, that the non-moving party cannot prove its claim. *Id.* at 607.

sub nom. Jones v. Resolution Trust Corp., 516 U.S. 817, 116 S. Ct. 74, 133 L. Ed. 2d 33 (1995).

In resolving whether a given factual dispute requires submission to a jury, the court must inspect the presented evidence through the looking glass of each party's substantive evidentiary burden. Anderson, 477 U.S. at 254-55, 106 S. Ct. at 513. The court, however, must not weigh conflicting evidence for probity or make credibility determinations. Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992). "It is not part of the court's function, when deciding a motion for summary judgment, to decide issues of material fact, but rather determine whether such issues exist to be tried. The court must avoid weighing conflicting evidence or making credibility determinations." Hairston v. Gainesville Sun Publishing Co., 9 F.3d 913, 919 (11th Cir. 1993)(citations omitted). At the same time, "[t]he nonmoving party must provide more than a mere scintilla of evidence to survive a motion for judgment as a matter of law; 'there must be a substantial conflict in evidence to support a jury question.'" Tidwell v. Carter Products, 135 F.3d 1422, 1425 (11th Cir. 1998) (quoting Carter v. City of Miami, 870 F.2d 578, 581 (11th Cir.1989)).

## STATEMENT OF FACTS[2]

Mr. Cain was employed as an inside electrician for JRW from December 18, 1974,

---

[2] As required when determining a Motion for Summary Judgment, the Statement of Facts reflects the facts in the light most favorable to Mr. Cain, the non-moving party. All disputed facts are resolved in his favor and all reasonable inferences arising from those facts are drawn in his favor. Lujan v. National Wildlife Federation, 497 U.S. 871, 888-89, 110 S. Ct. 3177, 3188-89, 111 L. Ed. 2d 695 (1990); Zaben v. Air Products & Chemicals, Inc., 129 F.3d 1453, 1455 (11th Cir. 1997).

Page 4 of 10

until July 29, 1997, when JRW terminated him.

By all accounts, Mr. Cain was a good electrician, but he had attendance problems. JRW attendance policy requires "regular work attendance," with "all absences . . . accounted for." Def. Exh. 4, p. 242. An employee is "designated an 'irregular worker' and [is] subject to . . . progress steps of discipline" if he accumulates six single-day, unexcused absences in a 180-day period or three single-day, unexcused absences in a 30-day period. *Id.* at 243. The progressive discipline steps are: step one, counseling session with management and a written warning; step two, two-day suspension/final warning; and step three, suspension with intent to discharge. *Id.* at 243-44. If the employee works 180 days after any disciplinary action without further unexcused absence, his record is cleared of all prior discipline. *Id.* at 244.

In addition to the policy governing single-day unexcused absences, JRW's attendance policy proscribes absences of two consecutive days without consent of "proven sickness." *Id.* Under the policy, an employee could be terminated if he was absent for two consecutive days without JRW's consent, except if he was absent due to a "proven" sickness. *Id.* at 244.

Over the term of Mr. Cain's employment, JRW gave him five verbal warnings, five written warnings, three two-day suspensions, and one five-day suspension with intent to discharge. Mr. Cain had seven single-day, unexcused absences between August 8, 1996 and December 23, 1996 and received a written warning on January 9, 1997. On March 12, 1997, he was suspended for five days with the intent to discharge for violating the two consecutive day absence rule.

When he returned to work from his suspension, JRW placed Mr. Cain on a Last Chance Agreement. The Last Chance Agreement had an effective date of 30 months (March 17, 1997 until October 1, 1999). The Agreement stated, "The grievant [Mr. Cain] will be discharged *immediately* in the event he accumulates one (1) absence of any description (to include partial shift, *job injury* and etc.) within eighteen (18) months from the effective date of this Agreement," which was March 17, 1997. Def. Exh. 8 (emphasis added). Furthermore, the Agreement provided that no contract leave (sick days, floating days, graduated days) could be taken on Mondays or on the first scheduled shift following a holiday, and two contract days could not be taken during any one calendar month covered by the Agreement. *Id*. Mr. Cain signed the agreement, accepting its terms and conditions. *Id*.

Mr. Cain injured his back at work on July 26, 1997, and he went to the doctor about the injury on July 28, 1997 (a Monday), missing work in violation of the Last Chance Agreement. He came to work the following day and brought a doctor's note explaining his absence. JRW terminated Mr. Cain for violating the Last Chance Agreement.

## DISCUSSION

JRW contends that it is entitled to a summary judgment because Mr. Cain cannot establish a prima facie case of age discrimination[3] because Mr. Cain cannot show that he

---

[3] Mr Cain has not presented direct evidence or statistical evidence of age discrimination. Therefore, this case is a circumstantial evidence case covered by the venerable *McDonnell Douglas* framework. *Bogle v. Orange County Board of County Commissioners*, 162 F.3d 653, 656 (11th Cir. 1998).

was qualified for his position, due to his extensive absences, or that he was replaced by a significantly younger employee.

1. Qualification for Position as Part of Prima Facie Case of Discriminatory Termination

JRW contends that Mr. Cain cannot establish a prima facie case of discrimination because he cannot establish that he was "qualified." Defendant's Brief in Support of Its Motion for Summary Judgment, p. 14. JRW argues, "Although there is no dispute that plaintiff adequately performed the tasks attendant to his inside electrician job, [the] plaintiff was woefully inadequate in meeting a fundamental criteria of any employment, i.e., attendance." *Id.* at 14 & n. 59 (citing *Tyndall v. National Education Centers, Inc.*, 31 F.3d 209, 213 (4th Cir. 1994); *Thomas v. General Services Admin.* 49 FEP 1602, 1608 (D.D.C. 1989), *aff'd* 1990 WL 71992 (D.C. Cir. 1990); *Wimbley v. Bolger*, 642 F. Supp. 481, 485 (W.D. Tenn. 1986), *aff'd mem.* 831 F.2d 298 (6th Cir. 1987)).

The Eleventh Circuit, however, has long held that a plaintiff's qualification for a previously-held job in a termination case is *not* an element of the prima facie case. The Court has noted:

> "[T]he *McDonnell Douglas* test has been modified in cases where a plaintiff is discharged from a previously held position (as opposed to failure to hire or to promote cases)" by deleting the prong requiring proof of qualification. According to the [*Rosenfield v. Wellington*] court, "the reason for this modification is that in cases where a plaintiff has held a position for a significant period of time, qualification for that position *sufficient to satisfy the test of a prima facie case* can be inferred." *Whether the employee was adequately performing his job would become an issue only if the employee articulated unsatisfactory performance as the reason for discharge.*

*Young v. General Foods Corp.*, 840 F.2d 825, 830 n. 3 (11th Cir. 1988)(quoting *Rosenfield*

v. Wellington Leisure Products, Inc., 827 F.2d 1493, 1495 n.2 (11th Cir. 1987)), cert. denied, 488 U.S. 1004, 109 S. Ct. 782, 102 L. Ed. 2d 774 (1989); see also Pace v. Southern Railway Systems, 701 F.2d 1383, 1386 & n.7 (11th Cir. 1983)(citing Simmons v. McGuffey Nursing Home, Inc., 619 F.2d 369, 371 (5th Cir. 1980)(quoting Marshall v. Westinghouse Electric Corp., 576 F.2d 588, 590 (5th Cir. 1978))), cert. denied, 464 U.S. 1018, 104 S. Ct. 549, 78 L. Ed. 2d 724 (1983).

Therefore, at least in this Circuit, qualification for the position held is not an element of a prima facie case when the decision at issue is termination. Whether Mr. Cain's attendance was unacceptable and disqualified him from his position as an inside electrician is better left to the second and third stages of the McDonnell Douglas framework.

2. Comparators

JRW contends that Mr. Cain cannot prove his prima facie case because he cannot show that JRW hired "anyone" to replace him. It contends that Mr. Cain's workload was "reallocated" among existing inside electricians. The Court notes that Mr. Cain has not presented any evidence to dispute this assertion of fact.

However, showing he was replaced by someone outside the protected class or, because this is an ADEA case, some one substantially younger[4] is not the only way that Mr. Cain can establish his prima facie case of age discrimination. This Circuit has

---

[4]O'Connor v. Consolidated Coin Caterers corp., 517 U.S. 308, 313, 116 S. Ct. 1307, 1310, 134 L. Ed. 2d 433 (1996)("Because the ADEA prohibits discrimination on the basis of age and not class membership, the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class.").

established at least three ways in which a plaintiff alleging discriminatory discharge due to a work-rule violation may establish a prima facie case: (1) the plaintiff "was fired and replaced by one outside the protected class;" (2) the plaintiff "was suspended or fired while others not in the plaintiff's protected class, having comparable or lesser qualifications, were retained;" or (3) the plaintiff was fired for misconduct and "the misconduct for which he was discharged was nearly identical to that engaged in by an employee outside the protected class whom the employer retained." *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1185 (11th Cir. 1984)(internal citations and quotations omitted).

The parties do not dispute that Mr. Cain cannot show he was replaced by someone outside the protected class. Moreover, the parties do not discuss or present any evidence establishing a prima facie case by the second manner. Indeed, this manner of proving a prima facie case appears to be used primarily when a plaintiff is discharged pursuant to a reduction in force. *See Martin v. Teledyne Brown Engineering*, 924 F. Supp. 1131, 1138-39 (S.D. Ala. 1996); *Perkie v. Group Technologies, Inc.*, 845 F. Supp. 852, 856 (M.D. Fla. 1994).

Apparently, Mr. Cain travels under the third manner of proving a prima facie case of discriminatory discharge; i.e., he asserts that other employees were not placed on a Last Chance Agreement after missing two days; that other employees ' Last Chance Agreements were not as severe and restrictive; and that other employees were not fired under similar circumstances. However. Mr Cain has failed to identify for the Court even one individual under similar circumstances, much less whether the individual was outside the protected class.

Therefore, the Court finds that Mr. Cain has failed to present sufficient evidence of a question of fact regarding whether similarly-situated employees outside the protected class, or significantly younger than Mr. Cain, were treated differently with regard to the imposition or terms of Last Chance Agreement, or with regard to termination for violation of the terms of the Last Chance Agreement. Defendant's Motion for Summary Judgment is due to be granted.

CONCLUSION

For the reasons set forth above, the Court finds that there are no disputed issues of material fact and Summary Judgment in favor of Defendant is due to be granted as a matter of law. The Court will enter an Order contemporaneously herewith in accordance with this Memorandum of Opinion.

DONE this 13th day of May, 1999.

H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE